UNITED STATES *v.* MIDLAND-ROSS CORP.

No. 628.  Argued March 31, 1965.—Decided May 3, 1965.

*Frank I. Goodman* argued the cause for the United States. With him on the brief were *Solicitor General Cox, Assistant Attorney General Oberdorfer, Wayne G. Barnett* and *Joseph Kovner.*

*Theodore R. Colborn* argued the cause for respondent. With him on the brief was *Theodore M. Garver.*

Mr. Justice Brennan delivered the opinion of the Court.

The question for decision is whether, under the Internal Revenue Code of 1939, certain gains realized by the taxpayer are taxable as capital gains or as ordinary income. The taxpayer bought noninterest-bearing promissory notes from the issuers at prices discounted below the face amounts. With one exception, each of the notes was held for more than six months, and, before maturity and in the year of purchase, was sold for less than its face amount but more than its issue price.[1] It is conceded that the

---

[1] The original plaintiff, Industrial Rayon Corporation, was merged into respondent Midland-Ross Corporation in 1961. During 1952, 1953, and 1954, Industrial's idle funds were used to purchase 13 non-interest-bearing notes, varying in face amount from $500,000 to $2,000,000, from General Motors Acceptance Corporation, Commercial Investment Trust Company and Commercial Credit Company. The original issue discount in most instances was calculated to yield the equivalent of 2% to 2½% on an annual basis if the note were held to maturity, and the gains on sale approximated the discount earned to date. It is not contended that any part of the gain was attributable to market fluctuations as opposed to the passage of time.

gain in each case was the economic equivalent of interest for the use of the money to the date of sale but the taxpayer reported the gains as capital gains. The Commissioner of Internal Revenue determined that the gains attributable to original issue discount were but interest in another form and therefore were taxable as ordinary income. Respondent paid the resulting deficiencies and in this suit for refund prevailed in the District Court for the Northern District of Ohio, 214 F. Supp. 631, and in the Court of Appeals for the Sixth Circuit, 335 F. 2d 561. Because this treatment as capital gains conflicts with the result reached by other courts of appeals,[2] we granted certiorari. 379 U. S. 944. We reverse.

The more favorable capital gains treatment applied only to gain on "the sale or exchange of a capital asset." § 117 (a)(4). Although original issue discount becomes property when the obligation falls due or is liquidated prior to maturity and § 117 (a)(1) defined a capital asset as "property held by the taxpayer,"[3] we have held that

> "not everything which can be called property in the ordinary sense and which is outside the statutory exclusions qualifies as a capital asset. This Court has long held that the term 'capital asset' is to be construed narrowly in accordance with the purpose

---

[2] *Real Estate Investment Trust of America* v. *Commissioner,* 334 F. 2d 986 (C. A. 1st Cir.), petition for writ of certiorari pending, No. 620; *Dixon* v. *United States,* 333 F. 2d 1016 (C. A. 2d Cir.), affirmed, *post,* p. 68; *Rosen* v. *United States,* 288 F. 2d 658 (C. A. 3d Cir.); *United States* v. *Harrison,* 304 F. 2d 835 (C. A. 5th Cir.); *Commissioner* v. *Morgan,* 272 F. 2d 936 (C. A. 9th Cir.). See also *Pattiz* v. *United States,* 160 Ct. Cl. 121, 311 F. 2d 947; *Schwartz* v. *Commissioner,* 40 T. C. 191; *Leavin* v. *Commissioner,* 37 T. C. 766; *Gibbons* v. *Commissioner,* 37 T. C. 569.

[3] "Sec. 117. *Capital Gains and Losses.*

"(a) *Definitions.*—As used in this chapter—

"(1) *Capital Assets.*—The term 'capital assets' means property held by the taxpayer . . . ."

of Congress to afford capital-gains treatment only in situations typically involving the realization of appreciation in value accrued over a substantial period of time, and thus to ameliorate the hardship of taxation of the entire gain in one year." *Commissioner* v. *Gillette Motor Co.,* 364 U. S. 130, 134.

See also *Corn Products Co.* v. *Commissioner,* 350 U. S. 46, 52. In applying this principle, this Court has consistently construed "capital asset" to exclude property representing income items or accretions to the value of a capital asset themselves properly attributable to income. Thus the Court has held that "capital asset" does not include compensation awarded a taxpayer as representing the fair rental value of its facilities during the period of their operation under government control, *Commissioner* v. *Gillette Motor Co., supra;* the amount of the proceeds of the sale of an orange grove attributable to the value of an unmatured annual crop, *Watson* v. *Commissioner,* 345 U. S. 544; an unexpired lease, *Hort* v. *Commissioner,* 313 U. S. 28; and oil payment rights, *Commissioner* v. *P. G. Lake, Inc.,* 356 U. S. 260. Similarly, earned original issue discount cannot be regarded as "typically involving the realization of appreciation in value accrued over a substantial period of time . . . [given capital gains treatment] to ameliorate the hardship of taxation of the entire gain in one year."

Earned original issue discount serves the same function as stated interest, concededly ordinary income and not a capital asset; it is simply "compensation for the use or forbearance of money." *Deputy* v. *du Pont,* 308 U. S. 488, 498; cf. *Lubin* v. *Commissioner,* 335 F. 2d 209 (C. A. 2d Cir.). Unlike the typical case of capital appreciation, the earning of discount to maturity is predictable and measurable, and is "essentially a substitute for . . . payments which § 22 (a) expressly characterizes as gross income[; thus] it must be regarded as ordinary income, and

it is immaterial that for some purposes the contract creating the right to such payments may be treated as 'property' or 'capital.' " *Hort v. Commissioner, supra,* at 31. The $6 earned on a one-year note for $106 issued for $100 is precisely like the $6 earned on a one-year loan of $100 at 6% stated interest. The application of general principles would indicate, therefore, that earned original issue discount, like stated interest, should be taxed under § 22 (a) as ordinary income.[4]

The taxpayer argues, however, that administrative practice and congressional treatment of original issue discount under the 1939 Code establish that such discount is to be accounted for as capital gain when realized. Section 1232 (a)(2)(A) of the Internal Revenue Code of 1954[5] provides that "upon sale or exchange of . . . evi-

---

[4] Our disposition makes it unnecessary to decide certain questions raised at argument, as to which we intimate no view:

(1) Since each note was sold in the year of purchase, we do not reach the question whether an accrual-basis taxpayer is required to report discount earned before the final disposition of an obligation;

(2) Since no argument is made that the gain on the sale of each note varied significantly from the portion of the original issue discount earned during the holding period, we do not reach the question of the tax treatment under the 1939 Code of "market discount" arising from post-issue purchases at prices varying from issue price plus a ratable portion of the original issue discount, or of the tax treatment of gains properly attributable to fluctuations in the interest rate and market price of obligations as distinguished from the anticipated increase resulting from mere passage of time.

[5] *"Sale or exchange.—*

"(A) [As amended by § 50 (a), Technical Amendments Act of 1958, Pub. L. 85–866, 72 Stat. 1606] *General rule.*—Except as provided in subparagraph (B), upon sale or exchange of bonds or other evidences of indebtedness issued after December 31, 1954, held by the taxpayer more than 6 months, any gain realized which does not exceed—

.         .          .           .          .

"(ii) . . . an amount which bears the same ratio to the original issue discount (as defined in subsection (b)) as the number of com-

dences of indebtedness issued after December 31, 1954, held by the taxpayer more than 6 months, any gain realized . . . [up to the prorated amount of original issue discount] shall be considered as gain from the sale or exchange of property which is not a capital asset," that is, it is to be taxed at ordinary income rates. From this the taxpayer would infer that Congress understood prior administrative and legislative history as extending capital gains treatment to realized original issue discount. If administrative practice and legislative history before 1954 did in fact ignore economic reality and treat stated interest and original issue discount differently for tax purposes, the taxpayer should prevail. See *Hanover Bank* v. *Commissioner,* 369 U. S. 672; *Deputy* v. *du Pont, supra;* cf. *Helvering* v. *R. J. Reynolds Tobacco Co.,* 306 U. S. 110. But the taxpayer must persuade us that this was clearly the case, see *Watson* v. *Commissioner, supra,* at 551, and has not done so.

The taxpayer refers us to various statutory provisions treating original issue discount as ordinary income in specific situations, arguing that these establish a congressional understanding that in situations not covered by such provisions, original issue discount is entitled to capi-

---

plete months that the bond or other evidence of indebtedness was held by the taxpayer bears to the number of complete months from the date of original issue to the date of maturity,

"shall be considered as gain from the sale or exchange of property which is not a capital asset. Gain in excess of such amount shall be considered gain from the sale or exchange of a capital asset held more than 6 months."

Section 1232 (b) defines "original issue discount" as "the difference between the issue price and the stated redemption price at maturity. . . ."

We intimate no view on the construction of this statute. In particular, we imply no view upon the Commissioner's implicit contention that accrual-basis taxpayers are required to report discount as earned prior to final disposition of obligations acquired after December 31, 1954. Cf. *Lubin* v. *Commissioner, supra.*

tal gains treatment. Even if these provisions were merely limited applications of the principle of § 1232 (a)(2), they may demonstrate, not that the general rule was to the contrary, but that the general rule was unclear, see Brandis, Effect of Discount or Premium on Bondholder's North Carolina Income Tax, 19 N. C. L. Rev. 1, 7 (1940), and that Congress wished to avoid any doubt as to its treatment of particular situations. Cf. S. Rep. No. 1622, 83d Cong., 2d Sess., p. 112 (1954).

First we are referred to §§ 42 (b) and 42 (c) of the 1939 Code.[6] Section 42 (b) applied, *inter alia,* to discounted noninterest-bearing obligations periodically redeemable for specified increasing amounts, and permitted

---

[6] "Sec. 42. Period in Which Items of Gross Income Included.

.   .   .   .   .

"(b) Noninterest-bearing Obligations Issued at Discount.—If, in the case of a taxpayer owning any noninterest-bearing obligation issued at a discount and redeemable for fixed amounts increasing at stated intervals or owning an obligation described in paragraph (2) of subsection (d), the increase in the redemption price of such obligation occurring in the taxable year does not (under the method of accounting used in computing his net income) constitute income to him in such year, such taxpayer may, at his election made in his return for any taxable year beginning after December 31, 1940, treat such increase as income received in such taxable year. . . . In the case of any such obligations owned by the taxpayer at the beginning of the first taxable year to which his election applies, the increase in the redemption price of such obligations occurring between the date of acquisition . . . and the first day of such taxable year shall also be treated as income received in such taxable year.

"(c) Short-Term Obligations Issued on Discount Basis.—In the case of any obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue, the amount of discount at which such obligation is originally sold shall not be considered to accrue until the date on which such obligation is paid at maturity, sold, or otherwise disposed of."

cash-basis taxpayers an election to accrue the annual increase. If anything, the statutory language supports the Government's position, for it implies that an accrual-basis taxpayer has no election, but must accrue the increases; this seems to indicate a congressional understanding that such increases were ordinary income. Section 42 (c) postpones recognition of discount on short-term government obligations until maturity or sale. That provision, however, has its own history. Earlier law, requiring the proration of original issue discount according to the time the obligation was held, was considered to "impose on taxpayers the duty of making burdensome computations." See S. Rep. No. 673, Part 1, 77th Cong., 1st Sess., p. 30 (1941). The proration provisions had in turn succeeded a statute enacted, not to make an exception to a general rule of capital gains treatment for issue discount, but to insure that the then-existing exemption for discount as representing interest could be claimed by taxpayers other than the original holder. H. R. Conf. Rep. No. 17, 71st Cong., 1st Sess., p. 2 (1929). Since the tax exemption for Treasury paper was eliminated in 1941, there was no longer any important reason to distinguish exempt original issue discount from nonexempt market discount, and § 42 (c) was enacted expressly to simplify administration by eliminating the necessity for allocation between interest and capital gain or loss, and treating all discount as income, but taxable only on realization.[7]  If

---

[7] Since the statute applied only to paper with maturity of a year or less, the simplification resulting from recognizing income only on realization outweighed the possible shifting of income between tax years by accrual-basis taxpayers. At the same time, short-term government paper was excluded from the definition of "capital asset" in § 117 (a)(1)(D) of the 1939 Code, avoiding the necessity of separating out the amount of proceeds attributable to market fluctuations rather than earned discount. This exclusion is carried forward as § 1221 (5) of the 1954 Code.

the inferences drawn by respondent were correct, these provisions would be rendered superfluous by the enactment of § 1232 (a) (2), but they have been carried forward as §§ 454 (a) and (b) of the 1954 Code.

It is also argued that §§ 201 (e) and 207 (d) of the 1939 Code [8] manifested a congressional view opposed to ordinary income treatment. These sections required annual accrual of bond premium and discount by life and mutual casualty insurance companies. But again, somewhat like § 42 (b), these provisions provided for accrual by cash-basis taxpayers. See *Massachusetts Mutual Life Ins. Co.* v. *United States*, 288 U. S. 269. Moreover, the Com-

---

[8] "Sec. 201. Life Insurance Companies.

.    .    .    .    .

"(e) Amortization of Premium and Accrual of Discount.—The gross income, the deduction provided in section 201 (c) (7) (A) and the credit allowed against net income in section 26 (a) shall each be decreased by the appropriate amortization of premium and increased by the appropriate accrual of discount attributable to the taxable year on bonds, notes, debentures or other evidences of indebtedness held by a life insurance company. Such amortization and accrual shall be determined (1) in accordance with the method regularly employed by such company, if such method is reasonable, and (2) in all other cases, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary.

.    .    .    .    .

"Sec. 207. Mutual Insurance Companies other than Life or Marine.

.    .    .    .    .

"(d) Amortization of Premium and Accrual of Discount.—The gross amount of income during the taxable year from interest, the deduction provided in subsection (b) (4) (A), and the credit allowed against net income in section 26 (a) shall each be decreased by the appropriate amortization of premium and increased by the appropriate accrual of discount attributable to the taxable year on bonds, notes, debentures or other evidences of indebtedness held by a mutual insurance company subject to the tax imposed by this section. Such amortization and accrual shall be determined (1) in accordance with the method regularly employed by such company, if such method is reasonable, and (2) in all other cases, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary."

missioner had interpreted these provisions as requiring him to treat market discounts or premiums, as well as interest agreed upon by the borrower in the guise of original issue discount, as ordinary income items.[9]

Thus, the taxpayer has not demonstrated that, in specifying ordinary income treatment for original issue discount in particular situations, Congress evinced its understanding that such discount would otherwise be entitled to capital gains treatment. Therefore we turn to the question whether Treasury practice and decisional law preclude ordinary income treatment.

The taxpayer premises this part of his argument primarily upon the case of *Caulkins* v. *Commissioner,* 1 T. C. 656, acq., 1944 Cum. Bull. 5, aff'd, 144 F. 2d 482 (C. A. 6th Cir.), acq. withdrawn, 1955–1 Cum. Bull. 7.[10] The taxpayer there purchased an "Accumulative Installment Certificate" providing for 10 annual payments of $1,500 in return for $20,000 at the end of 10 years. The certificate provided for gradually increasing cash surrender and loan values. In 1939 the taxpayer received $20,000 as agreed and, relying on the long-term capital gains provisions of the Revenue Act of 1938, c. 289, 52 Stat. 447, reported only half the profit as taxable income. Acting primarily on the theory that the certificate was not in registered form as required by § 117 (f), the Commissioner sought to treat the increment as interest or as income arising out of a transaction entered into for profit. The Tax Court upheld the taxpayer, finding that the certificate was in

---

[9] This provision was eliminated and the life insurance provision amended by the Revenue Act of 1964, § 228, 78 Stat. 19, 98–99, amending §§ 818 (b), 822 (d) (2) of the 1954 Code. See S. Rep. No. 830, 88th Cong., 2d Sess., pp. 122–124, for a detailed explanation.

[10] We consider the decisions and acquiescence only as evidence of the earlier understanding of the tax law. With respect to the claim of a particular taxpayer that he relied to his detriment on the acquiescence, see *Dixon* v. *United States, post,* p. 68.

registered form within the meaning of § 117 (f) of the Revenue Act of 1938, a provision identical to § 117 (f) of the 1939 Code,[11] but its discussion of the capital gains question is at best opaque.[12] The Court of Appeals acknowledged that "the transaction presents no true aspect of capital gain" and that "Congress might well have made the differentiation urged by the Commissioner, since it is difficult to perceive any practical reason for taxing increment of the type involved here differently from ordinary income . . . [as] consideration paid for the use

---

[11] *"Retirement of Bonds, Etc.*—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor."

[12] The entire discussion of the capital gains question is as follows: "Prior to the enactment of the Revenue Act of 1934, the payment of a bond by the corporation issuing it was held to be but the fulfillment of a contractual obligation to repay money in accordance with the fixed terms of the obligation and not a sale or exchange of a capital asset. *Fairbanks* v. *United States,* 306 U. S. 436; *Felin* v. *Kyle,* 102 Fed. (2d) 349; *John H. Watson, Jr.,* 27 B. T. A. 463; *Arthur E. Braun, Trustee,* 29 B. T. A. 1161; *Frank J. Cobbs,* 39 B. T. A. 642; petition to review dismissed, 111 Fed. (2d) 644. Section 117 (f), *supra,* appeared for the first time in the Revenue Act of 1934. In *McClain* v. *Commissioner,* 311 U. S. 527, the Supreme Court said: 'It is plain that Congress intended by the new sub-section (f) to take out of the bad debt provision certain transactions and to place them in the category of capital gains and losses.' This tribunal has held that by a parity of reasoning Congress also intended to take out of the ordinary income provisions of the revenue act gains realized by a taxpayer in connection with the retirement of the specified obligations. *William H. Noll,* 43 B. T. A. 496." 1 T. C., at 660–661.

It thus seems unclear whether the acquiescence related to the essentially uncontested capital gains question, and whether the decision was meant to apply beyond the narrow confines of § 117 (f). See *Dixon* v. *United States, post,* at 76–79.

of the amounts paid in. . . ." 144 F. 2d, at 484. Nevertheless it construed the words "amounts received by the holder upon . . . retirement" in § 117 (f) as unsusceptible of partition, and therefore as including the increment attributable to interest, which, with the principal amount, was thus taxable only as capital gain.

*Caulkins* did not unambiguously establish that original issue discount was itself a "capital asset" entitled to capital gains treatment. It held only that under § 117(f) Congress had not provided that the "amount" received on retirement might be broken down into its component parts. This was inconsistent with the view expressed in *Williams* v. *McGowan,* 152 F. 2d 570 (C. A. 2d Cir.), and approved by this Court in *Watson* v. *Commissioner, supra,* at 552, that "Congress plainly did mean to comminute the elements of a business; plainly it did not regard the whole as 'capital assets.' " 152 F. 2d, at 572. The Tax Court has consistently regarded *Caulkins* as having erroneously read § 117 (f) to preclude differentiation of the sources of proceeds on redemption. *Paine* v. *Commissioner,* 23 T. C. 391, 401, reversed on other grounds, 236 F. 2d 398 (C. A. 8th Cir.); *Stanton* v. *Commissioner,* 34 T. C. 1; see 3B Mertens, The Law of Federal Income Taxation 184–186, 378–381 (Zimet rev.). The Commissioner, in addition to withdrawing his acquiescence in *Caulkins,* has also rejected the interpretation of "amount" under § 117 (f) as not subject to apportionment under general principles. Rev. Rul. 119, 1953–2 Cum. Bull. 95; Rev. Rul. 55–136, 1955–1 Cum. Bull. 213; Rev. Rul. 56–299, 1956–1 Cum. Bull. 603. To the extent the Tax Court's decision in *Caulkins* rested, as its opinion indicates, on a reading of § 117 (f) to require more favorable treatment on redemption than on sale, it is clearly at odds with the legislative purpose, which was merely to treat alike redemptions and sales or exchanges of securities in registered form or with coupons attached,

and not to extend the class of capital assets. Rev. Rul. 56–299, *supra*. Such an interpretation, which would not benefit the taxpayer in the sale transactions here involved, may underlie the Tax Court's decision but it has no justification in logic or in the legislative history, and even the taxpayer would reject such a meaning, however well supported by the *Caulkins* acquiescence. Finally, notwithstanding the acquiescence, what little other administrative practice we are referred to seems contrary to *Caulkins*. See I. T. 1684, II–1 Cum. Bull. 60 (1923).

The concept of discount or premium as altering the effective rate of interest is not to be rejected as an "esoteric concept derived from subtle and theoretic analysis." *Old Colony R. Co* v. *Commissioner*, 284 U. S. 552, 561. For, despite some expressions indicating a contrary view,[13] this Court has often recognized the economic function of discount as interest. In *Old Mission Co.* v. *Helvering,* 293 U. S. 289, 290, for example, the Court regarded it as "no longer open to question that amortized bond discount may be deducted in the separate return of a single taxpayer." [14] The radical changes since *Caulkins* in the concept of treatment of accumulated interest under the 1939 Code are consistent with this. For example, accrued bond interest on stated interest bonds sold between interest dates has long been taxable to the seller of the bonds. See I. T. 3175, 1938–1 Cum. Bull. 200. But on "flat" sales of defaulted notes at prices in excess of face

---

[13] See, *e. g., New York Life Ins. Co.* v. *Edwards*, 271 U. S. 109, 116; *Old Colony R. Co.* v. *Commissioner, supra.* Though these bond premium cases are said to be inconsistent with the view taken here, they are equally inconsistent with the treatment of discount to the borrower.

[14] See also *Helvering* v. *Union Pacific R. Co.*, 293 U. S. 282, 285, 288; *Western Maryland R. Co.* v. *Commissioner*, 33 F. 2d 695, 696 (C. A. 4th Cir.); *Longview Hilton Hotel Co.* v. *Commissioner,* 9 T. C. 180, 182.

amount, with no attribution of interest arrearages in the sale price, the requirement of allocation to treat a portion of the proceeds as ordinary income dates only from 1954. *Fisher* v. *Commissioner*, 209 F. 2d 513 (C. A. 6th Cir.); see *Jaglom* v. *Commissioner*, 303 F. 2d 847 (C. A. 2d Cir.). The propriety of such allocation in the present case is even more evident; unlike defaulted bond interest, there is no suggestion that full payment of the original issue discount will not be made at maturity.

For these reasons we hold that earned original issue discount is not entitled to capital gains treatment under the 1939 Code.

*Reversed.*