DANLY MACHINE CORPORATION,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 71 C 2530.

United States District Court,
N. D. Illinois, E. D.

Oct. 17, 1972.

Harry Thom, of Mayer, Brown & Platt, Edward C. Rustigan, Robert L. Fischer, Chicago, Ill., for plaintiff.

James R. Thompson, U. S. Atty. for Northern District of Illinois, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

This is an action by Danly Machine Corporation, a manufacturer of die sets and punch presses, seeking a refund of $105,365.55 in allegedly overpayed Federal income taxes. The case is presently before this Court for partial trial based upon a written stipulation of all uncontested facts and separate statements by each party regarding contested issues of law not agreed to.

The debate centers around what treatment ought to be given under Internal Revenue Code, § 163 for original issue bond discount paid on an investment unit consisting of an obligation and an option for tax years prior to 1968.

The pertinent facts follow. During its fiscal year ended June 30, 1956, the taxpayer issued a total of $1,000,000 of 6% subordinated debentures to three insurance companies. The debentures, in the amount of $500,000, $250,000 and $250,000, respectively, were payable in semi-annual installments each year from 1956 through 1970. The money market being what it was and the fact that Danly was already quite heavily indebted precipitated an arrangement whereby as an inducement to the insurance companies to loan the $1,000,000, the taxpayer was also required to issue to the insurance companies options to purchase a total of 30,000 shares of the taxpayer's common stock at predetermined prices. The issuance of these options enabled the taxpayer to avoid paying the higher interest rates demanded by potential lenders on subordinated debt without options. The taxpayer issued warrants during its fiscal year ended June 30, 1958, to the holders of the 6% subordinated debentures in lieu of the options originally given them. The warrants were for the purchase of 30,000 shares of the taxpayer's common stock at predetermined prices at any time up to January 18, 1966. The warrants were substituted for the options as a part of certain negotiated amendments in the terms of the 6% subordinated debentures. The taxpayer made the final installment payments on the 6% subordinated debentures during its fiscal year ended June 30, 1966. In January 1965, the warrant holders elected to exercise their option and requested the taxpayer to either redeem the warrants or register the 30,000 shares of stock for public offering. Taxpayer elected to redeem these warrants at a negotiated price of

$7.75 per share. The market bid price for the taxpayer's stock at the time of negotiation was $16 per share. The total cost for the redemption of the warrants amounted to $232,500. This amount was treated by the taxpayer as a special charge against its retained earnings account and not as an expense for accounting purposes. In its 1965 Annual Report to its shareholders, the taxpayer explained that by retiring the warrants, the taxpayer was avoiding the dilution of shareholders' equity and the payment of dividends which at the then annual rate of $1 per share amounted to $30,000 per year. The warrants were described in the equity section of the taxpayer's balance sheet. The subordinated debentures were described in the section of taxpayer's balance sheet where long-term debt was recorded. The taxpayer did not claim any deduction on its income tax return for the year ended June 30, 1965, as filed, for the amount paid to redeem the warrants nor did it claim any amortizable bond discount on its income tax returns filed for its fiscal years ended June 30, 1956 through June 30, 1966, the date of the debenture retirement. On September 22, 1967, the taxpayer timely filed a claim for refund of tax in the amount of $113,944.12, for its fiscal year ended June 30, 1965. On June 12, 1968, the Internal Revenue Service disallowed the claim for refund in full. On September 12, 1968, the taxpayer filed a protest to the disallowance by the Internal Revenue Service of the claim for refund. Upon reconsideration of the taxpayer's claim for refund, the Internal Revenue Service allowed a refund of tax in the amount of $4,199.94 for the fiscal year ended June 30, 1965 and $4,378.63 for the fiscal year ended June 30, 1966. On October 21, 1969, the Internal Revenue Service mailed to the taxpayer by certified mail notice of disallowance of the balance of the taxpayer's claim for refund. The taxpayer timely filed this suit for refund of federal income tax in the sum of $105,365.55, representing the balance of the disallowed claim for refund.

The taxpayer seeks a determination of whether it is entitled to a deduction for the fair market value of the warrants redeemed, under Internal Revenue Code § 163, for its 1965 tax year and whether the total amount of original issue bond discount which the taxpayer had not previously deducted could be deducted for its 1965 tax year. It bases its contentions on both its interpretation of Treasury Regulation § 1.163–3 and on the general argument that the expense of warrant redemption incurred as part of an investment unit consisting of an indebtedness and an option is proper original issue bond discount and thus an interest cost under § 163. It is an interest expense, Danly asserts, sanctioned by Treasury Regulations. The Government challenges these contentions on both procedural and substantive grounds arguing that the deduction was not § 163 interest and challenging this Court's jurisdiction on the grounds that plaintiff's present basis for a refund varies substantially from its original claim.

Though the general history regarding Danly's indebtedness is plain on its face, the grounds upon which plaintiff seeks a refund does indeed follow a more checkered chronology and in view of defendant's contention of 'variance', warrants some elaboration.

Danly's original Form 843 claim for a refund filed on September 22, 1967 sought "a deduction as an ordinary and necessary business expense under § 162 of the Internal Revenue Code of 1954 as amended, payments made with respect to the retirement of debt." This theory was rejected. Danly then filed a protest abandoning its § 162 contentions and arguing instead that the stock warrants were an integral interest cost incurred as part of the indebtedness and their redemption was therefore deductible interest under § 163(a) of the Internal Revenue Code. This theory was likewise rejected. Though still claiming a refund under § 163, plaintiff's contentions seem to be somewhat different as we go to trial.

Plaintiff now claims that the redemption of the warrants was original issue bond discount paid on an investment unit consisting of an obligation and an option. In its first argument (P. 3—Plaintiff's Supporting Brief) Plaintiff seeks to have Treasury Regulation § 1.-163-3, which allows for investment unit deductions, applied retroactively so that the relief provided therein would apply to its claims.

The regulation clearly states that it applies prospectively only for taxable years ending on or after December 24, 1968 and only for the remaining life of the bonds (although it applies to obligations and options issued between December 31, 1954 and December 24, 1968). Plaintiff challenges the prospective application of this regulation as an abuse of the Commissioners power and would have us apply it retroactively thereby including its claims as well.

In its second argument (P. 8) Plaintiff claims that irrespective of whether Treasury Regulation § 1.163-3 is applied retroactively or prospectively it is entitled to a deduction for its 1965 taxable year for the fair market value of the warrants redeemed since it is a § 163 interest cost sanctioned by the Treasury. It finds this sanction in Treasury Regulation § 1.163-3(a)(2)(iii). Plaintiff argues that Paragraph (a)(2)(iii) plus Example 6 in that Section indicates that the deduction of fair market value for exercise of options in an investment unit can be deducted in years prior to 1968 and that such a deduction would be left undisturbed by Internal Revenue.

We will deal with the substantive merits of these contentions subsequently and we note them here simply for the jurisdictional questions raised by defendants.

■ The Government claims that this Court has no jurisdiction to hear plaintiff's claim since its present claim varies considerably from the claim it originally filed with the Internal Revenue. The Government concedes that plaintiff's second contention, (that irrespective of

Treasury Regulation § 1.163-3's prospective application Example 6 therein sanctions a deduction as interest for exercised warrants) does not so substantially vary from its original claim to warrant a finding of lack of jurisdiction and abandons its jurisdictional argument as to that argument. The Government's concession in this respect is warranted. In its protest, plaintiff claimed the redemption of the warrants as a plain § 163 interest cost. In its Memorandum in this action plaintiff merely reasserts this contention based on new found information. Plaintiff still argues that the deduction is § 163 interest though in the form of original issue bond discount and in fact the partial refund made by the Government was based upon its own computation of original issue discount. Thus plaintiff's usage of § 1.163-3(a)(2)(iii) and Example 6 in its second argument is merely used to indicate that the Government sanctions such a deduction prior to 1968. More importantly, defendants have agreed that they were apprised of the argument that the regulation authorized the deduction. The claim having been previously raised we find that jurisdiction exists as to the second claim.

Plaintiff's first argument, however, presents a more difficult problem. It is quite clear that at no time prior to this action did plaintiff claim that § 1.163-3 should be applied retroactively. What remains for us to decide jurisdictionally is whether that contention varies so substantially from the original claim as to render it fatally flawed.

■ It has been clearly established that a taxpayer cannot advance one ground for refund in his filed claim and then rely upon an entirely different ground in a subsequent suit, a point which plaintiff concedes. Carmack et al. v. Scotfield, 201 F.2d 360 (5th Cir. 1953). The purpose of this rule is to fully apprise the Commissioner of the grounds for the taxpayer's claim so that he may make a proper decision and to narrow the issues involved.

■ This information can be presented through various sources other than the original claim filed, such as affidavits, statements, conferences and negotiations so long as the end result is the presentation of the full amount of information available and the narrowing of the controversy. United States v. Pierotti, 154 F.2d 758 (9th Cir. 1946); Clark v. United States, 143 F.Supp. 165 (D.C.1956).

In view of the foregoing plaintiff argues that there was no variance between the theory or "scope" of its claim as evolved from its written protest and subsequent negotiations and its current argument that § 1.163–3 should be applied retroactively. It contends that the Government was fully apprised of the fact that it sought a deduction of the warrant redemption as § 163 original issue bond discount since it based its partial refund on that ground and the fact that the retroactive argument in regard to Treasury Regulation § 1.163–3 was not *specifically* raised is irrelevant since the Government knew of § 1.163–3's existence and should not be able to now plead ignorance in that respect.

The Government on the other hand contends that the Commissioner may insist on strict compliance with the rule that all grounds must be set forth in a single administrative claim. Indeed the Supreme Court in Angelus Milling Co. v. Commissioner, 325 U.S. 293, at 296, 299, 65 S.Ct. 1162, at 1164, 1165, 89 L.Ed. 1619 (1945) stated:

> The effective administration of these modern complicated revenue measures inescapably leads Congress to authorize detailed administrative regulations by the Commissioner of Internal Revenue. He may insist upon full compliance with his regulations.
> \* \* \*
> \* \* \* it is not enough that somewhere under the Commissioner's roof is the information which might enable him to pass on a claim for refund. The protection of the revenue authorizes the Commissioner to demand information in a particular form, and he

is entitled to insist that the form be observed so as to advise him expeditiously and accurately of the true nature of the claim.

The Government although conceding that the Commissioner may waive strict compliance with these rules and that in our instance the Commissioner did waive the variance between the claim and the written protest nevertheless claims that the variance between the claim as finally developed and the theory of retroactivity now advanced is a substantial variance which was not waived and of which the Commissioner was never informed.

■ The facts in our action admittedly make for a close case. If plaintiff's claim had remained throughout its pre-suit history in its barest form as it appeared in the protest simply seeking a deduction as § 163 interest and the plaintiff had suddenly raised the theory of retroactive application of Regulation § 1.163–3 for original issue bond discount on investment units for the first time at trial, the variance would unquestionably be fatal. In our instance, however, the gap between the controversy as construed prior to this action and as it is being framed now is not as great, several evolutionary steps having taken place along the way. Thus the "variance" question in our case is not whether someone who has raised a bare § 163 interest claim can raise the retroactive application of § 1.163 at trial but rather whether someone who has claimed original issue bond discount on an investment unit consisting of an obligation and a stock option can now argue at trial that a statute which allows for such a deduction only prospectively ought to be applied retroactively.

While we wholeheartedly agree that "since, however, the tight net which the Treasury Regulations fashion is for the protection of the revenue, courts should not unduly help disobedient refund claimants to slip through it" (*Angelus Milling Co., supra*, p. 297, 65 S.Ct. p. 1165), we believe that the substance of the claim being basically the same both

before trial and at trial, i. e. that the deduction ought to be allowed as original issue bond discount under § 163, for investment units there is no fatal variance. The substance of the claim remains virtually the same though a new theory or substantiation to buttress that claim is now being advanced in addition to the one raised earlier.

We therefore find jurisdiction for the first argument with a keen awareness however that our finding of lack of "variance" is limited to the unique facts in our case and in no way intends to extend the permissible gap between a claim filed with the Commissioner and one raised in a subsequent suit.

That we have found jurisdiction, however, becomes merely academic in view of the fact that we find no merit to plaintiff's first argument. Treasury Regulation § 1.163–3 provides:

Treasury Regulations on Income Tax (1954 Code) (26 C.F.R.):

§ 1.163–3 *Deduction for discount on bonds issued on or before May 27, 1969.*

(a) *Discount upon issuance.* (1) If bonds are issued by a corporation at a discount, the net amount of such discount is deductible and should be prorated or amortized over the life of the bond. For purposes of this section, the amortizable bond discount equals the excess of the amount payable at maturity (or, in the case of a callable bond, at the earlier call date) over the issue price of the bond (as defined in paragraph (b)(2) of § 1.1232–3).

(2) In the case of a bond issued by a corporation after December 31, 1954, as part of an investment unit consisting of an obligation and an option, the issue price of the bond is determined by allocating the amount received for the investment unit to the individual elements of the unit in the manner set forth in sub-division (ii)(a) of § 1.1232–3(b)(2).

Discount with respect to bonds issued by a corporation as part of investment units consisting of obligations and options after December 31, 1954, and before December 24, 1968—

(i) Increased by any amount treated as bond premium which has been included in gross income with respect to such bonds prior to December 24, 1968, or

(ii) Decreased by any amount which has been deducted by the issuer as discount attributable to such bonds prior to December 24, 1968, and

(iii) Decreased by any amount which has been deducted by the issuer prior to December 24, 1968, upon the exercise or sale by investors of options issued in investment units with such bonds,

should be amortized, starting with the first taxable year ending on or after December 24, 1968, over the remaining life of such bonds.

Thus it allows for original issue bond discount on an investment unit consisting of an obligation and an option issued between December 31, 1954 and December 24, 1968 to be amortized over the remaining life of the bonds for taxable years ending on or after December 24, 1968. Consequently, if an issuer of such investment units had never deducted the original issue bond discount resulting from these investment units he could still recover that deduction by spreading it over the remaining life of the bonds after 1968 provided they were issued between 1954 and 1968 and provided also that the provisions of § 1.163–3(a)(2)(i), (ii) and (iii) are met. Plaintiffs would have us apply this "catch-up" regulation retroactively to all "open" tax years not yet closed by the statute of limitations. Thus if a claimant after 1968 had several open tax years prior to 1968 he would be permitted to amortize the investment unit orig-

inal issue discount over one or more of those open years. In effect plaintiff would have us read the "life of the bonds" as not necessarily meaning the actual post-1968 life but also the pre-1968 statutory life in the sense that those prior years are still open and consequently the life of the bonds are still in existence for tax purposes.

We disagree with plaintiff and find no grounds for permitting retroactive application of this regulation.

 The Commissioner under Internal Revenue Code § 7805 has discretion to apply a regulation retroactively or prospectively provided the decision is a rational one. Although this Court has the power to review that discretion for any abuse it is not the function of the Court to adjust regulations or amend them. United States v. Correll, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967). The burden of proving that a regulation is not rational or that the Commissioner was arbitrary in its application lies upon the taxpayer. Dixon v. United States, 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965).

The plaintiff in this case has failed to carry that burden. In examining § 1.-163–3 we find that the decision to apply it prospectively only is not irrational or arbitrary and that its retroactive application would benefit few taxpayers. The Commissioner made his decision based upon his ability to implement it in a precise and fair fashion and we do not intend to nor are we permitted to disturb that decision simply because a few taxpayers such as plaintiff will benefit from a retroactive application.

Plaintiff therefore cannot utilize § 1.-163–3 to transform 1965 and 1966 into "catch-up" years and its first argument must fail.

Plaintiff's second argument contends that irrespective of Treasury Regulations § 1.163–3's prospective application the cost of redeeming warrants issued as part of investment units consisting of an obligation and options is a proper § 163 interest deduction sanction by the Treasury Regulations.

Section 163 of the Internal Revenue Code provides generally that:

"There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."

There is no specific provision in the Code which provides for deduction of original issue bond discount as interest though Treasury Regulations § 1.161–12(c)(3) provides for such a deduction amortized over the life of the bonds. See also United States v. Midland Ross Corp., 381 U.S. 54, 85 S.Ct. 1308, 14 L.Ed.2d 214 (1965).

Thus to use plaintiff's example, if a ten year $100 bond was issued for $90 there was $10 of original issue discount which was amortizable at the rate of $1 per year. Plaintiff concedes that the regulations were silent as to the application of original issue bond discount deductions to obligation-option investment units. It was not until 1968 that the Treasury Regulation § 1.163–3 elaborated upon in regard to plaintiff's first argument was promulgated recognizing the validity of such a deduction. Plaintiff argues that this deduction has always been proper and bases its contention on Paragraph (a)(2)(iii) of § 1.-163–3 which provides that post-1968 claims must be:

(iii) Decreased by any amount *which has been deducted by the issuer prior to December 24, 1968 upon the exercise or sale by investors of options issued in investment units with such bonds*, should be amortized, starting with the first taxable year ending on or after December 24, 1968 over the remaining life of such bonds. (Emphasis added.)

It would seem that the Government simply deducts the cost of exercised options from post-1968 relief rather than disallowing it as an improper interest cost indicating that it is a permissible

deduction. Plaintiff furthermore derives this result from Example 6 under that section which states:

Example (6). O Corporation, on January 1, 1956, for a consideration of $100,000, issued 20-year bonds with a $100,000 face value, together with options to purchase stock of O Corporation, which could be exercised at any time up to 5 years from the date of issue. The issue price of the bonds as determined under the rules of allocation set forth in subdivision (ii)(a) of § 1.1232–3(b)(2) is $98,000. *O Corporation, upon the exercise of the options prior to Dec. 24, 1968, had deducted from income their fair market value at the time of exercise*, which is assumed for purposes of this example to have been $3,000. Even though the bonds are considered to have been issued at a discount under paragraph (a)(1) of this section, O Corporation would have no deduction over the remaining life of the bonds, inasmuch as O Corporation, in computing the amount of such deduction, is required under paragraph (a)(2)(iii) of this section to reduce the amount which would otherwise be treated as bond discount, $2,000 ($100,000–$98,000), by the amount deducted from income upon the exercise of the options, in this case, $3,000. (Emphasis added.)

It would seem from this example that a pre-1968 deduction such as plaintiff's is permitted since the regulation merely offsets it rather than disallows it.

■ Yet we agree with the Government's construction that provisions cited by the plaintiff do not allow the claimed deduction. Both paragraph (a)(2)(iii) and Example 6 merely provide for the offsetting of *erroneously* deducted pre-1968 discount rather than authorizing it.

■ To agree with plaintiff's construction would allow for deductions based upon vague speculations and obscure interpretations contrary to the general rule that an item of expenditure not specifically allowed is not deductible.

As the Court in Chock-Full O'Nuts Corp. v. United States, 322 F.Supp. 772, 774 (S.D.N.Y.1971) stated, ". . . deductions in the computation of tax are matters of Legislative grace, and only if there is clear provision for a particular deduction, can one be allowed . . ."

There is no language in § 1.163–3 which authorizes such a deduction. The authorizing provision as the Government points out states:

(a) Discount upon issuance. (1) If bonds are issued by a corporation at a discount, the net amount of such discount is deductible and should be prorated or amortized over the life of the bonds.

Thus the matter appearing in paragraph (a)(2)(iii) and Example 6 does not authorize the deduction claimed by plaintiff.

Neither does it appear that such a deduction would be allowed by the Government. Paragraph (a)(2)(iii) merely states that if a post-1968 § 1.163–3 claimant seeks to amortize investment-unit discount over the remaining life of the bonds he cannot take a double deduction and must offset previously deducted discount. The regulation could have just as easily provided that such pre-1968 deductions must be returned to income for those years in which it was erroneously taken but the result would remain unchanged since the taxpayer would simply recoup that same pre-1968 amount by amortizing it over the post-1968 life of the bonds. There is no indication, however, that the Government would not require those taxpayers who erroneously took such pre-1968 deduction to return those deductions to income where there is no post-1968 life to the bonds such as in our case.

It is interesting to note that even if we were to find for plaintiff on the basis of this argument he would not be entitled to the large amount he seeks in refunds. Original issue bond discount

must be amortized *over the life of the bonds* and consequently even if the redemption of the warrants would be considered original issue discount the entire amount could not be deducted for the single year of 1965. It is also interesting to note that plaintiff is not claiming prior reliance on the paragraph (a)(2)(iii) provision. Though the outcome of this case would not necessarily be different, plaintiff would have a stronger case if it claimed that it made a deduction *in* 1965 *relying* upon its reading of that provision.

 There being no specific provision allowing plaintiff's deduction prior to 1968 and there being no rational justification for it plaintiff's second argument must fail.

It is undeniably difficult to frame any "Code" that covers every conceivable factual situation. It is all the more difficult to frame such a code covering an area so complex as the Internal Revenue laws. The Internal Revenue Code is not a study in subtleness or a practice in implicitness and consequently deductions must be based on specific authorizations if the revenue laws are to have any effect.

To summarize then we have found that 1) jurisdiction exists for both of plaintiff's arguments there being no substantial variation between its pre-suit and trial allegations; 2) the prospective only application of Treasury Regulation § 1.163–3 was not an abuse of the Commissioner's power and that consequently plaintiff cannot claim 1965 as a 'catch-up' year in which to deduct original issue discount on obligation-option investment units; and 3) that neither § 1.163–(a)(2)(iii) nor Example 6 sanctions nor authorizes plaintiff's interest deduction; and there being no specific provision authorizing such a deduction and no valid reason to do so under Internal Revenue Code § 163, the deduction was improper.

Decision for the defendant, the United States Government.