T.C. Memo. 2001-275

UNITED STATES TAX COURT

CRISTEEN B. COMEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

DAVID L. COMEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 5201-96, 19836-96.    Filed October 10, 2001.

Cristeen B. Comey and David L. Comey, pro sese.

<u>Mark J. Miller</u> and <u>Frederic J. Fernandez</u>, for respondent.

MEMORANDUM OPINION

BEGHE, <u>Judge</u>:  Respondent determined the following
deficiencies in and additions to petitioner Cristeen B. Comey's

Federal income tax for 1991 and 1992:[1]

| Year | Deficiency | Sec. 6662 Substantial Understatement Penalty | Sec. 6662 Negligence or Disregard Penalty |
|------|-----------|--------------------------|------------------------|
| 1991 | $25,679 | $5,136 | -- |
| 1992 | 281 | -- | $56 |

Respondent also determined the following deficiencies in and additions to the 1991 and 1992 Federal income tax of Mrs. Comey's son, petitioner David L. Comey:

| Year | Deficiency | Sec. 6651(a)(1) Failure to File Addition | Sec. 6662 Negligence or Disregard Penalty |
|------|-----------|--------------------------|------------------------|
| 1991 | $7,834 | $1,889 | $1,567 |
| 1992 | 118,430 | 23,338 | 23,686 |

In the notice to Mrs. Comey, respondent determined that the gain realized on the sale of certain mutual fund shares in 1991 was the income of Mrs. Comey. Similarly, in the notice to Mr. Comey, respondent determined that the interest, dividends, and capital gains paid or realized in 1991 and 1992 with respect to the shares of certain publicly traded corporations (and a debenture and bank account) were the income of Mr. Comey.

---

[1] All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise specified.

These cases having been consolidated for the purposes of trial, briefing, and opinion, petitioners assert that the foregoing items were instead the income of Landtrak Development Ltd. (Landtrak), a C corporation related to petitioners.

We hold for respondent, for the reasons set forth below.[2] For convenience, we combine our findings and opinion with respect to each petitioner and issue.

Procedural Background

Before we set forth our findings and our discussion of the substantive issues, we note that petitioners have repeatedly failed to comply with the deadlines set by this Court. This conduct has led to a lengthy delay in the resolution of these cases.

---

[2] In the notice to petitioner Cristeen B. Comey, respondent also determined that Mrs. Comey received taxable Social Security income in the amounts of $2,831 and $1 for 1991 and 1992, respectively. Petitioners have stipulated, and we find, that Mrs. Comey received this income.

Respondent also determined that Mrs. Comey was not entitled to a $2,071 real estate tax deduction claimed for 1992, for lack of substantiation. Petitioners did not address this issue at trial or offer any evidence relating to it. Accordingly, petitioners have failed to meet their burden of proof, and we find that Mrs. Comey is not entitled to the claimed deduction. See Rule 142(a) (burden of proof generally on taxpayer); Rule 149(b) (party's failure to produce evidence, in support of issue of fact as to which party has burden of proof, may be ground for determination of issue against party); Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943) (burden of clearly showing right to claimed deduction is on taxpayer).

When trial of these consolidated cases began on March 25, 1999, at the Court's Milwaukee, Wisconsin, trial session, petitioners had not signed a stipulation of facts. During the trial, petitioners did sign a stipulation of facts and agreed to other stipulations on the record. Petitioners indicated, however, that if given more time, they could discover additional evidence. Therefore, at the close of trial, the Court held the record open until April 26, 1999, for receipt of additional stipulations, information, documents, or evidence. The Court also set a seriatim briefing schedule, under which petitioners' opening brief was due on or before June 23, 1999.

During the more than 2 years that have passed since these deadlines were first set, the Court has extended them numerous times. Petitioners requested some of these extensions, because Mr. Comey claimed to have had health problems, or was incarcerated. Other extensions, occasioned by Mr. Comey's incarcerations, were granted on the Court's own motion.

On September 11, 2000, the Court ordered Mr. Comey to file a status report by the earlier of December 14, 2000, or Mr. Comey's release from jail. On December 21, 2000, not having received anything from Mr. Comey, the Court investigated and learned that Mr. Comey had been released from jail on October 6, 2000. As a result of Mr. Comey's failure to comply with the Court's order, during a long period when he was not incarcerated, the Court

ordered the record closed as of December 26, 2000, without having received any additional materials from petitioners.

In its December 26, 2000, order, the Court also modified the briefing schedule to provide that respondent (and not petitioners) would file the opening brief. The Court further ordered that respondent's opening brief was due on February 28, 2001, and that petitioners' answering brief was due on April 30, 2001. Respondent's brief was served on February 28, 2001, and was filed by the Court on March 5, 2001.

After Mr. Comey had once again failed to notify the Court of his current address, and after the Court had learned, through its own inquiries, that Mr. Comey would be under house arrest beginning May 17, 2001, the Court extended the due date of petitioners' brief to July 9, 2001.

By order dated July 24, 2001, the Court further extended the due date for petitioners' brief until August 24, 2001. In the teleconference that led to this order, the Court clearly informed Mr. Comey that no further delay would be tolerated, and that no further extension would be granted.

Petitioners did not send the Court a brief on or before the August 24, 2001, due date, nor did they inform the Court that they would not be filing a brief or offer any excuse for their failure to file a brief.

On September 7, 2001, in light of the more than 2 years that had passed since trial and petitioners' repeated failures to file a brief on or before the deadlines set by the Court or to comply with the other conditions of the orders of this Court, the Court ordered that no further extensions would be granted and that petitioners would not be allowed to file a brief. See Rule 151(c) (delinquent briefs will not be accepted unless accompanied by a motion setting forth reasons deemed sufficient by the Court to account for the delay).

Although we could declare petitioners in default and dismiss their cases, see Rule 123, Stringer v. Commissioner, 84 T.C. 693 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986), we choose instead to decide these cases on the merits. See Furniss v. Commissioner, T.C. Memo. 2001-137.

1.  Mrs. Comey's Income for 1991

Mrs. Comey resided in Elm Grove, Wisconsin, when her petition was filed. Mrs. Comey timely filed her Forms 1040, U.S. Individual Income Tax Return, for 1991 and 1992.

Sales Proceeds Received by Mrs. Comey in 1991

In 1991, an "Individual Investor Account", number 663 16E23, was maintained with a Milwaukee, Wisconsin, office of Merrill Lynch Pierce, Fenner & Smith, Inc. (Merrill Lynch). The name on this Merrill Lynch account was "MRS CRISTEEN COMEY". The address on the account was Mrs. Comey's residence and the taxpayer

identification number on the account was Mrs. Comey's Social Security number.

In early 1991, 4,710 shares of the Merrill Lynch Capital Fund Class A (Capital Fund shares) were held in the Merrill Lynch account. On February 5, 1991, pursuant to Mrs. Comey's orders, Merrill Lynch sold (or redeemed) the Capital Fund shares for $110,416. There was no indication on the Merrill Lynch account statements relating to this transaction that Mrs. Comey was holding the Capital Fund shares as an agent or nominee for Landtrak or for any other person or entity.

Beginning February 7, 1991, the $110,416 sales (or redemption) proceeds were briefly reinvested in shares of the Merrill Lynch Ready Assets Trust. The Ready Assets Trust account was also held in Mrs. Comey's name; the address on the account was Mrs. Comey's residence; and the taxpayer identification number was Mrs. Comey's Social Security number. There was also no indication on the Ready Assets Trust account statement relating to this transaction that Mrs. Comey was acting as agent or nominee for Landtrak or for any other person or entity.

On February 14, 1991, a Ready Assets Trust check for the $110,416 proceeds was deposited in a checking account maintained in Landtrak's name with M&I Bank of Menomonee Falls, Wisconsin. Approximately 1 week later, the proceeds were transferred to

another account maintained in Landtrak's name with Swiss Bank Corp. in Switzerland.

In the notice to Mrs. Comey, respondent determined that the gain realized on the sale of the Capital Fund shares should be included in Mrs. Comey's income for 1991. Respondent further determined that Mrs. Comey's basis in the Capital Fund shares was $19,628. Accordingly, respondent determined that Mrs. Comey realized $90,788 in unreported capital gain for 1991 (i.e., $110,416 proceeds less $19,628 basis equals $90,788 gain) from the sale of the Capital Fund shares.

During the conduct of the cases at hand, petitioners have not contested that Mrs. Comey received $110,416 in net proceeds from the sale of the Capital Fund shares in 1991. Although petitioners contend that Mrs. Comey had transferred ownership of the Capital Fund shares to Landtrak on January 1, 1987, they nevertheless admitted at trial that the Capital Fund shares were held in Mrs. Comey's name when sold.

We find that Mrs. Comey received $110,416 in net proceeds from the sale of the Capital Fund shares in 1991.

With respect to the basis in the Capital Fund shares, Mrs. Comey's petition did not assert that respondent's determination of basis was erroneous. At trial, however, petitioners offered a document prepared by Mr. Comey, which purported to show that Mrs. Comey's basis in the Capital Fund shares was higher than that

determined by respondent. Respondent did not agree that this document was accurate, and Mr. Comey neither explained how the document was prepared nor offered any evidence that it was reliable.[3] In light of petitioners' failures to allege error in the petition and to offer reliable, credible evidence at trial, we find that respondent's calculation of basis was correct and that a capital gain of $90,788 was realized on the sale of the Capital Fund shares in 1991. See Rule 34(b)(4) (petition shall contain clear and concise assignments of each and every error taxpayer alleges Commissioner committed, and any issue not raised in assignments of error shall be deemed to be conceded); Rule 142(a) (taxpayers generally have burden of proof); Rule 149(b) (party's failure to produce evidence, in support of issue of fact as to which party has burden of proof, may be ground for determination of issue against party).

The only error alleged by Mrs. Comey's petition is that the gain realized on the sale of the Capital Fund shares should be included in Landtrak's income rather than Mrs. Comey's income. More particularly, petitioners assert that on January 1, 1987, approximately 4 years before the Capital Fund shares were sold,

---

[3] For example, although the document prepared by Mr. Comey appears to be based in part on the history of Capital Fund distributions from 1974-87, petitioners did not offer any evidence concerning how and when Mrs. Comey originally acquired Capital Fund shares, what Mrs. Comey's basis was in the shares first acquired, or whether Mrs. Comey reported reinvested Capital Fund distributions as income on her Federal income tax returns.

Mrs. Comey acquired all of Landtrak's stock and transferred ownership of the Capital Fund shares to Landtrak as a contribution to its capital. Although petitioners admitted that the Capital Fund shares were held in Mrs. Comey's name when sold, petitioners claim that Mrs. Comey held the shares (and received the sales proceeds) as Landtrak's agent or nominee.

For the reasons set forth below, we conclude that Mrs. Comey neither acquired Landtrak's stock, nor transferred ownership of her Capital Fund shares to Landtrak, on January 1, 1987. To the contrary, we find that Landtrak's incorporator, Robert Riopelle, remained the sole owner of Landtrak's stock until February 1988, more than 1 year after the date identified by petitioners. Moreover, although Landtrak's stock ultimately was issued to Mrs. Comey after Mr. Riopelle's ownership ended, we find that Mrs. Comey never transferred ownership of her Capital Fund shares to Landtrak and did not act as Landtrak's agent or nominee. Finally, we hold that even if Mrs. Comey had, in form, transferred her Capital Fund shares to Landtrak at some time before their sale in 1991, Landtrak would not be recognized as the owner of the shares for tax purposes, because Landtrak had no business purpose and engaged in no business activity after Mr. Riopelle's ownership ended.

Purported Acquisition of Landtrak by Mrs. Comey

Landtrak is a Wisconsin corporation incorporated on January 23, 1985, by Mr. Riopelle; he originally owned all 500 shares of Landtrak's stock.

Petitioners assert that Mrs. Comey became the new owner of Landtrak on January 1, 1987. According to petitioners, on that date Landtrak redeemed the stock held by Mr. Riopelle, and Mrs. Comey acquired all 50 newly issued shares of Landtrak's stock.

Aspects of the record appear to support petitioners' assertions. The record contains a copy of Mr. Riopelle's Landtrak stock certificate. The front of that certificate bears a handwritten notation that the certificate was canceled on January 1, 1987. The reverse bears an assignment of the certificate to Landtrak; that assignment was signed by Mr. Riopelle and is also dated January 1, 1987. The record also contains a copy of a Landtrak stock certificate bearing Mrs. Comey's name, which is also dated January 1, 1987. Moreover, in the written stipulation of facts, the parties stipulated that Mr. Riopelle's Landtrak stock was canceled and all new Landtrak stock was issued to Mrs. Comey on January 1, 1987.

Notwithstanding these aspects of the record, the record as a whole establishes that Mrs. Comey did not acquire Landtrak's stock on January 1, 1987. Mr. Riopelle testified that he remained the sole owner of Landtrak until February 1988. Mr.

Riopelle also testified that he backdated documents at Mr. Comey's request. We found Mr. Riopelle's testimony to be forthright and credible. Moreover, it is supported by other evidence in the record. It is clear that Mr. Riopelle wrote checks on Landtrak's checking account, as part of the liquidation of his investment in Landtrak, in 1988. In addition, documents sent to the State of Wisconsin and to Swiss Bank Corp. indicate, consistently with Mr. Riopelle's testimony, that Mr. Riopelle controlled Landtrak until 1988.

We also note that the parties orally stipulated at trial that Mr. Riopelle may not have executed the writings on his Landtrak stock certificate, i.e., the writings assertedly canceling Mr. Riopelle's certificate and assigning his stock to Landtrak, until March 1988, notwithstanding the written stipulations that Mr. Riopelle's stock was redeemed on January 1, 1987. Moreover, Mrs. Comey admitted during respondent's cross-examination that she did not remember acquiring Landtrak stock on January 1, 1987.

For all these reasons, we find that Mrs. Comey did not acquire Landtrak's stock on January 1, 1987. To the contrary, we find that Mr. Riopelle remained Landtrak's sole owner until at least February 1988. The documents indicating that a change of ownership occurred on January 1, 1987, are unreliable. In addition, the parties' written stipulations that a change of

ownership occurred on January 1, 1987, are also contrary to fact, having been vitiated by their later oral stipulation concerning the backdating of the writing on Mr. Riopelle's stock certificate. See Cal-Me. Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989); Jasionowski v. Commissioner, 66 T.C. 312, 318 (1976) (Tax Court may disregard stipulation clearly contrary to evidence in record).

Purported Transfer of Capital Fund Shares to Landtrak

Petitioners further contend that when Mrs. Comey acquired Landtrak's stock on January 1, 1987, she also transferred her Capital Fund shares to Landtrak as a contribution to capital.

Once again, aspects of the record appear to support petitioners' contentions. The record contains a copy of a document titled "Assignment Separate from Certificate" signed by Mrs. Comey. This document purports to transfer 2,919 Capital Fund shares to Landtrak and is dated January 1, 1987.[4] The record also contains copies of some notations, in Mrs. Comey's handwriting, that refer to Capital Fund shares and to the date January 1, 1987.

---

[4] We note that 4,710 Capital Fund shares were sold in 1991. Although petitioners did not specifically address the issue, we understand them to argue that reinvested dividends account for the difference between the 2,919 shares purportedly transferred to Landtrak in 1987 and the 4,710 shares sold in 1991.

Notwithstanding these documents, we find that Mrs. Comey did not transfer the Capital Fund shares to Landtrak on January 1, 1987, or at any other time.  Although respondent did stipulate the admission into evidence of the Assignment Separate from Certificate, which petitioners offered as evidence of the purported contribution of the Capital Fund shares to Landtrak on January 1, 1987, respondent challenged the notations in Mrs. Comey's handwriting, which petitioners offered as evidence of the same purported transaction.

More importantly, during respondent's cross-examination of Mrs. Comey, it became clear that Mrs. Comey did not recall preparing the documents challenged by respondent.  It also became clear that Mrs. Comey neither remembered buying Landtrak stock on January 1, 1987, nor remembered what, if anything, she paid for those shares.  In short, as Mrs. Comey admitted, she did not remember assigning any of her Capital Fund shares to Landtrak.

We also note that the documents and testimony offered by petitioners do not consistently describe the asserted transfer of the Capital Fund shares.  One of the documents in Mrs. Comey's handwriting describes the purported transfer of the Capital Fund shares as having occurred on April 15, 1988 "retroactive to" January 1, 1987.  Another document titled "SPECIAL MEETING OF THE BOARD OF DIRECTORS" of Landtrak states that it confirms "Capitalization of the corporation by Cristeen B. Comey on

January 1, 1987, who at the time was the sole shareholder of the corporation." However, the "7" of the "1987" in this document is handwritten and appears to have been written over a typewritten "8".[5] Moreover, in a 1990 letter written to the Commissioner on Mrs. Comey's behalf, Mr. Comey stated that the transfer of Capital Fund shares occurred on or about January 1, 1988, not on January 1, 1987. Finally, at trial, Mr. Comey variously stated that Mrs. Comey capitalized Landtrak in 1988, in 1987 or 1988, or in "1988--1987 and 1988".

The objective facts support a finding that Mrs. Comey did not transfer her Capital Fund shares to Landtrak on January 1, 1987, or at any other time. We have found that, contrary to petitioners' contentions, Mr. Riopelle remained the sole owner of Landtrak throughout 1987. It does not make sense that Mrs. Comey would have transferred valuable property--the Capital Fund shares--to a corporation in which she had no interest. In addition, when the Capital Fund shares were sold in 1991--more than 4 years after their purported transfer to Landtrak--they were held in an "Individual Investor Account", not in a corporate account. The name, address, and taxpayer identification number

---

[5] We also note that the document was signed only by Mr. Comey (purportedly on behalf of Mr. Comey individually and as sole director and secretary of Landtrak) and refers to a board meeting supposedly held on Apr. 12, 1988, more than 1 year after the purported transfer of the Capital Fund shares to Landtrak on Jan. 1, 1987.

on that account were Mrs. Comey's name, residence, and Social Security number, respectively; there was no indication on the account that Mrs. Comey held the Capital Fund shares as agent or nominee for anyone. Although the sales proceeds were subsequently deposited in a checking account maintained in Landtrak's name, this was part of a plan to send the proceeds to Switzerland.

We conclude that the Assignment Separate From Certificate and the various notations in Mrs. Comey's handwriting are not reliable evidence of any transfer of the Capital Fund shares. Other than these documents, and the testimony of (and a few documents prepared by) Mr. Comey, which we find incredible, there is no evidence of any transfer of the Capital Fund shares to Landtrak.

For all these reasons, we conclude that Mrs. Comey did not transfer her Capital Fund shares to Landtrak on January 1, 1987, or at any later time. To the contrary, we conclude that Mrs. Comey owned the Capital Fund shares when they were sold.

### Mrs. Comey's Nominee Assertions

Although Mrs. Comey admits that she was the registered owner of the Capital Fund shares at the time of their sale, she asserts that she had transferred beneficial ownership of the shares to Landtrak in 1987. In essence, Mrs. Comey claims that she held

the Capital Fund shares (and received the sales proceeds) as Landtrak's "nominee" or other agent.

Of course, there may be an agency relationship between a corporation and its sole shareholder, and the tax consequences of property held by a genuine agent are attributed to the principal. See Commissioner v. Bollinger, 485 U.S. 340, 349 (1988) (corporation was agent of its shareholders); Montgomery v. Commissioner, T.C. Memo. 1989-295 (shareholder/president was agent of corporation). However, as the Supreme Court stated in Bollinger, the Commissioner is entitled to demand unequivocal evidence of the genuineness of the agency relationship, in the corporation-shareholder context, in order to prevent avoidance of the principle that a corporation and its shareholders are separate taxable entities. Moline Props., Inc. v. Commissioner, 319 U.S. 436 (1943). There is no such evidence in the cases at hand.

As we have explained, the record establishes that, contrary to petitioners' claims, Mrs. Comey neither acquired Landtrak's stock nor transferred the Capital Fund shares to Landtrak's capital on January 1, 1987. Moreover, there is no credible, much less any unequivocal, evidence that Mrs. Comey transferred beneficial ownership of the Capital Fund shares to Landtrak at any later time and then acted as Landtrak's agent. There is no evidence that Landtrak or Mrs. Comey informed any third party

that Mrs. Comey was acting as Landtrak's agent with respect to the Capital Fund shares.[6] There is also no evidence that any written agency agreement was entered into between Landtrak and Mrs. Comey.

These considerations further support our conclusion that Mrs. Comey was not acting as Landtrak's nominee or other agent and owned the Capital Fund shares when they were sold.

Landtrak's Lack of Business Purpose or Activity

We further conclude, even if Mrs. Comey had in form transferred her Capital Fund shares to Landtrak at some time before their sale, that Landtrak would not be recognized as the owner of the shares for tax purposes. This is because Landtrak had no business purpose and engaged in no business activity after Mr. Riopelle's ownership ended.

A corporation is usually recognized as a taxpayer separate from its shareholders. However, the corporate form may be disregarded where the corporation is "a sham or unreal". Moline Props., Inc. v. Commissioner, supra at 438-439 (citing Higgins v. Smith, 308 U.S. 473, 477-478 (1940) and Gregory v. Helvering, 293 U.S. 465 (1935)). More particularly, the corporate form may be disregarded where the corporation's purpose is not the equivalent

---

[6] Although, as noted supra p. 15, in a 1990 letter to the Commissioner written on Mrs. Comey's behalf, Mr. Comey stated that the Capital Fund shares were transferred to Landtrak on or about Jan. 1, 1988.

of business activity and the corporation carries on no business activity.  Id.; Shaw Constr. Co. v. Commissioner, 35 T.C. 1102, 1113-1114 (1961), affd. 323 F.2d 316 (9th Cir. 1963).  A corporation that originally had a business purpose or that once engaged in business activity may also be disregarded, if the corporation subsequently becomes inactive and no longer has a business purpose.  See Owens v. Commissioner, 568 F.2d 1233, 1239 (6th Cir. 1977), affg. in part and revg. in part on another ground 64 T.C. 1 (1975); Lowndes v. United States, 384 F.2d 635 (4th Cir. 1967).

When Mr. Riopelle owned the shares of Landtrak, Landtrak provided engineering consulting services and filed Forms 1120, U.S. Corporation Income Tax Return.  It therefore appears that Landtrak had a business purpose and engaged in business activity during Mr. Riopelle's ownership.

Petitioners claim that Landtrak also had a business purpose and engaged in business activity after Mr. Riopelle's ownership ended.  According to Mr. Comey, after Landtrak's stock had been issued to Mrs. Comey, Landtrak financed the development of, and attempted to obtain intellectual property protection for, certain devices that Mr. Comey claims to have invented.  Mr. Comey further claims that Landtrak used the proceeds of sale of the Capital Fund shares for this purpose.

Mr. Comey admitted at trial that he had no receipts or similar evidence relating to Landtrak's purported activities. At one moment, Mr. Comey testified that all documents were lost in a flood or had been destroyed deliberately to preserve the secrecy of his inventions. At another moment, Mr. Comey testified that there were no receipts or other documents because all transactions had been done in cash or in Switzerland (once again to preserve the secrecy of his inventions). All these explanations for the absence of documentary evidence of Landtrak's purported activities we find incredible.

Other than Mr. Comey's testimony (and a few documents prepared and signed solely by Mr. Comey), which we find incredible, there is no evidence that Landtrak had any business purpose or conducted any business activity, once Mr. Riopelle's ownership ended in February 1988. We also note that as of the time of trial Landtrak had not filed any Forms 1120, U.S. Corporation Income Tax Return, for any year after 1987. Moreover, in 1999 Landtrak informed the State of Wisconsin that it was an inactive corporation.

In short, petitioners have failed to prove that Landtrak had any business purpose or engaged in any business activity after Mr. Riopelle's ownership ended in February 1988. Accordingly, we also conclude that even if Mrs. Comey had, in form, transferred her Capital Fund shares to Landtrak before their sale, the gain

on the sale of the shares would still be included in Mrs. Comey's income, because Landtrak is disregarded for tax purposes.

For all the foregoing reasons, we hold that Mrs. Comey's 1991 income includes the $90,788 capital gain realized on the sale of the Capital Fund shares, as determined by respondent.

2. <u>Mr. Comey's Income for 1991 and 1992</u>

Mr. Comey's address was in Winnetka, Illinois, when his petition was filed. Mr. Comey filed his Federal income tax return (Form 1040) for 1991 on June 28, 1993. He filed his return for 1992 on August 4, 1993.

<u>Amounts Received by Mr. Comey in 1991</u>

On a Schedule B, Interest and Dividend Income, attached to his Form 1040 for 1991, Mr. Comey reported receiving $438 of interest paid with respect to an AT&T debenture. Mr. Comey also reported receiving $28,056 of dividends paid with respect to the stock of 21 corporations.[7] Mr. Comey had inherited much of this stock upon the death of his father, Aubrey Comey, in 1967.

On a Schedule D, Capital Gains and Losses, attached to his Form 1040 for 1991, Mr. Comey reported receiving proceeds of $9,596 on the sale of stock in two corporations.

---

[7] The corporations were American Express, Ameritech, Asarco, AT&T, Bell Atlantic, Bellsouth, Bethlehem Steel, Comsat, DQE, Exxon, GTE, Illinois Power, Northern States Power, Nynex, Oklahoma Gas & Electric, Outboard Marine, Pacific Gas & Electric, Pacific Telesis, Robbins & Meyers, Southwestern Bell, and US West.

Although Mr. Comey reported the interest, dividends, and proceeds on the Schedules to his 1991 return, he did not include them in his income on the Form 1040. Instead, he described these amounts as "nominee distribution[s]". Mr. Comey reported a total income of only $5,101 on his Form 1040 for 1991.

In the notice to Mr. Comey for 1991, respondent determined that the $438 of interest and the $28,056 of dividends were Mr. Comey's income. Respondent also determined that $9,396 of the $9,596 in proceeds was capital gain taxable to Mr. Comey; respondent allowed Mr. Comey a basis of $200 in one of the stocks sold.

Mr. Comey admits that he received the dividends described on his return and in the notice. Moreover, during the course of this litigation Mr. Comey has neither contested that he received the interest and proceeds nor asserted that he is entitled to additional basis in the stock sold. Accordingly, on the basis of the information set forth on Mr. Comey's return, Mr. Comey's admission, and Mr. Comey's failure to contest (or to introduce evidence relating to) these issues, we find that Mr. Comey received the interest, dividends, and proceeds determined in the notice, and that capital gains of $9,396 were realized on the sale of the stock by Mr. Comey in 1991. See Rules 34(b)(4), 142(a), 149(b).

Mr. Comey's only argument is that these amounts are not his income, because he received them as Landtrak's nominee.

Amounts Received by Mr. Comey in 1992

On a Schedule B, Interest and Dividend Income, attached to his Form 1040 for 1992, Mr. Comey reported receiving $75 of interest and $16,024 of dividends. The dividends were paid by 18 of the 21 corporations that had paid dividends to Mr. Comey in 1991.

On a Schedule D, Capital Gains and Losses, attached to his Form 1040 for 1992, Mr. Comey reported that he had received proceeds of $5,070 on the sale of the AT&T debenture.

Although Mr. Comey reported the interest, dividends, and sale proceeds on the Schedules to his 1992 return, he did not include them in his income on the Form 1040. As he had done for 1991, Mr. Comey described these amounts as "nominee distribution[s]". Mr. Comey reported total income of only $5,103 on his Form 1040 for 1992.

In the notice to Mr. Comey for 1992, respondent determined that the $75 of interest and the $16,024 of dividends were Mr. Comey's income. Respondent also determined that the $5,070 sale proceeds were taxable to Mr. Comey as capital gain.

Mr. Comey admits that he received the $16,024 of dividends. He also has neither contested that he received the $75 of interest and the $5,070 proceeds, nor asserted that he is

entitled to basis in the debenture.  Accordingly, on the basis of the information contained in Mr. Comey's return, Mr. Comey's admission, and Mr. Comey's failure to contest (or to introduce evidence relating to) these issues, we find that Mr. Comey received the interest, dividends, and proceeds described on his return and in the notice for 1992.  We also find that respondent's determination of basis was correct and that a $5,070 capital gain was realized on the sale of the debenture in 1992.

Once again, Mr. Comey's only argument is that these amounts are not his income, because he received them as Landtrak's nominee.

### Dividends Received by Landtrak in 1992

As explained in more detail below, Mr. Comey claims that in 1978 he relinquished ownership of the securities giving rise to the income items in issue.  Nevertheless, Mr. Comey admitted at trial (and we find) that until mid-1992, the stock with respect to which the dividends were paid (and sales proceeds received) was registered in Mr. Comey's name, with no legend or other indication on the certificates that the shares were held by Mr. Comey as nominee.

In mid-1992, Mr. Comey tendered the stock certificates to their issuers (or to the relevant transfer agents) and instructed them to reissue the certificates registered in Landtrak's name.

The parties have stipulated that during 1992, $3,400 in dividends was paid on stock registered in Landtrak's name.

The notice to Mr. Comey for 1992 included in Mr. Comey's income $2,919 of the $3,400 in dividends paid on stock registered in Landtrak's name. Respondent is aware of the discrepancy between the $2,919 in dividends determined in the notice and the $3,400 in dividends described in the stipulation, but has decided not to seek an increased deficiency.

In light of the parties' stipulation and respondent's decision, we find that $2,919 of dividends was paid in 1992 on stock registered in Landtrak's name.

Mr. Comey's only argument is that these dividends are Landtrak's income, because Landtrak owned the stock registered in its name.

### Sales Proceeds Received by Landtrak in 1992

In August 1992, shares of stock in 15 companies, which had been registered in Mr. Comey's name, but were recently reregistered in Landtrak's name, were transferred to an account maintained with PaineWebber and held in Landtrak's name. On August 19, 1992, the stock in the PaineWebber account was sold for aggregate proceeds of $591,438.

On August 21, 1992, a PaineWebber check for the proceeds was deposited in a checking account maintained in Landtrak's name with the M&I Bank of Menomonee Falls, Wisconsin. On August 26 or

27, 1992, the proceeds were transferred to an account maintained in Landtrak's name with Swiss Bank Corp. in Switzerland.

The notice to Mr. Comey included in Mr. Comey's income for 1992 the net capital gain realized on the sales of stock held in the PaineWebber account. Using calculations prepared by respondent's personnel, the notice determined that Mr. Comey's aggregate basis in the stock was $184,132, and that Mr. Comey's net capital gain was therefore $407,306 (i.e., $591,438 aggregate proceeds, less $184,132 aggregate basis, equals $407,306 net capital gain).

Mr. Comey has not disputed that Landtrak received proceeds from the stock sales by PaineWebber in amounts at least equal to the amounts determined by respondent. Moreover, Mr. Comey has not alleged that the basis in the stock sold was higher than that determined by respondent. To the contrary, on a Wisconsin Form 5, Corporation Franchise or Income Tax Return, for 1992, Mr. Comey reported that Landtrak received proceeds and realized gain from the sales by PaineWebber in amounts exceeding the amounts determined by respondent.[8]

Accordingly, we find that $407,306 of net capital gain was realized in 1992 on the sales of stock Mr. Comey had reregistered

---

[8] The Wisconsin Form 5, Corporation Franchise or Income Tax Return, filed by Mr. Comey claimed that the capital gains were exempt from Wisconsin tax.

in Landtrak's name and then placed in the PaineWebber account, as determined by respondent. Mr. Comey's only argument is that this gain is Landtrak's income, because Landtrak was the owner for tax purposes of the stock registered in its name.

Mr. Comey's Assertions

Mr. Comey claims that his income does not include the $513 in interest and $44,530 in dividends he personally received during 1991-92. Mr. Comey similarly claims that his income does not include the $14,466 in capital gains (corresponding to the $14,666 sales proceeds) he personally received during those years. According to Mr. Comey, although the relevant securities were registered in his name at the time of payment or sale: (1) Landtrak owned the securities; (2) Mr. Comey received the interest, dividends, and sales proceeds as Landtrak's nominee; and (3) these items are includable in Landtrak's income, not Mr. Comey's income.

Mr. Comey further claims that his income does not include either the $2,919 in dividends paid in 1992 on the stock registered in Landtrak's name or the $407,306 in net capital gain realized in August 1992 on the sales of that stock by PaineWebber. According to Mr. Comey, these items were Landtrak's

income because Landtrak owned the stock Mr. Comey had reregistered in its name.[9]

In short, Mr. Comey, like Mrs. Comey, claims that Landtrak was the owner for tax purposes of securities giving rise to the items of income in question. However, Mr. Comey's explanation of how Landtrak became the owner of his securities (sometimes referred to hereinafter as Mr. Comey's portfolio) is more complicated than Mrs. Comey's explanation of how Landtrak became the owner of her Capital Fund shares.

Mr. Comey claims that he originally transferred ownership of his stock portfolio to Lumatron Corporation in 1978. Mr. Comey further claims that ownership of his portfolio then effectively passed to Landtrak in 1987 or 1988, when he assertedly sold his Lumatron stock to Landtrak.

For the reasons set forth below, we conclude that Mr. Comey never transferred ownership of his portfolio to Lumatron.

---

[9] We note that respondent also issued a statutory notice to Landtrak for 1991 and 1992. That notice included in Landtrak's income all items respondent now asserts are Mr. Comey's income in the cases at hand.

Petitioners have not asserted that respondent's issuance of the notice to Landtrak should have any effect on the outcome of the cases at hand, such as attributing all the income items in controversy to Landtrak, rather than to Mr. Comey. See Clapp v. Commissioner, 875 F.2d 1396, 1401-1402 (9th Cir. 1989) (alternative notices attributing same items of income to individuals and related trusts were proper where Commissioner contended trusts were shams).

Accordingly, we also conclude that Landtrak did not become the direct or indirect owner of Mr. Comey's portfolio in 1987 or 1988, whether or not Mr. Comey sold Lumatron stock to Landtrak as he claims.  To the contrary, we conclude that Mr. Comey remained the title owner as well as the owner for tax purposes of his portfolio, until Mr. Comey had the stock in his portfolio reregistered in Landtrak's name in mid-1992.

Moreover, for the reasons also set forth below, we hold that although Landtrak became the title owner of Mr. Comey's portfolio in mid-1992, it did not become the tax owner.  Landtrak (and Landtrak's purported ownership of Mr. Comey's portfolio) are disregarded for tax purposes, because Landtrak did not have a business purpose or engage in business activity after Mr. Riopelle's ownership ended in 1988.  In addition, there is no evidence that Landtrak had any beneficial interest in, or dominion or control over, the stock registered in its name.

Purported Transfer of Mr. Comey's Portfolio to
Lumatron in 1978 and Landtrak in 1987 or 1988

Mr. Comey contends that he transferred his stock portfolio to Lumatron in 1978.  He further contends that ownership of that portfolio effectively passed to Landtrak in 1987 or 1988, when he assertedly sold his Lumatron stock to Landtrak.

Mr. Comey specifically contends that his 1978 transfer to Lumatron was made pursuant to an "Inventor's Agreement" between

Lumatron and Mr. Comey dated January 15, 1978.  According to Mr. Comey, under the terms of the Inventor's Agreement, Lumatron agreed to sponsor Mr. Comey's research and development in exchange for Mr. Comey's contribution of his portfolio to Lumatron's capital.

First, we note that the copy of the "Inventor's Agreement" contained in the record was signed solely by Mr. Comey, purportedly on behalf of Lumatron and on behalf of Mr. Comey individually.  Other than this document and the self-serving testimony of Mr. Comey, which we have found incredible, there is no evidence of any transfer of Mr. Comey's portfolio to Lumatron.

Second, it appears that Lumatron had been dissolved, and therefore lacked legal capacity, when Mr. Comey assertedly transferred his portfolio to it.  Therefore, even if Mr. Comey had attempted to transfer his portfolio to Lumatron via an "Inventor's Agreement" in 1978 as he claims, it appears that the transfer would have been ineffective under relevant State (Illinois) law.

The record shows that an Illinois corporation named Lumatron Corporation (Lumatron) was incorporated on February 13, 1968. Mr. Comey has offered copies of stock certificates which purport to show that Mr. Comey acquired some Lumatron stock in February 1968 and January 1971.

The record also shows, however, that on December 1, 1975, more than 2 years before Lumatron purportedly contracted to acquire Mr. Comey's portfolio, the State of Illinois had administratively dissolved Lumatron for failure to file annual reports and pay franchise taxes.

Illinois law provides that an administratively dissolved corporation ceases to exist as of the date of dissolution. The dissolved corporation is not permitted to carry on any business, except as necessary to wind up and liquidate its affairs. See 805 Ill. Comp. Stat. Ann. 5/12-40(c) (West 2000); Regal Package Liquor, Inc. v. J.R.D., Inc., 466 N.E.2d 409, 411 (Ill. App. Ct. 1984).

An administratively dissolved Illinois corporation may be reinstated if certain statutory requirements are met. Moreover, under the "relation back" doctrine of Illinois law, once the corporation has been reinstated its corporate existence is deemed to have continued without interruption; all acts of its officers, directors, and shareholders that would have been valid but for the dissolution are ratified and confirmed. See 805 Ill. Comp. Stat. Ann. 5/12-45 (West 2000); Regal Package Liquor, Inc. v. J.R.D., Inc., supra.

Mr. Comey is now aware that Lumatron had been administratively dissolved in 1975 and was still dissolved when it purportedly agreed to acquire his portfolio in 1978. However,

Mr. Comey claims that Lumatron was later reinstated and that the reinstatement retroactively validated the purported Inventor's Agreement between Lumatron and Mr. Comey.

At trial, Mr. Comey offered a copy of a document he claimed to have filed to effect Lumatron's reinstatement. This document was filed with the State of Illinois on October 20, 1992, almost 17 years after Lumatron's dissolution.

Illinois law provides that an administratively dissolved corporation may be reinstated within 5 years following the date of issuance of the certificate of dissolution. See 805 Ill. Comp. Stat. Ann. 5/12-45 (2000). To be reinstated, the dissolved corporation must file an application for reinstatement containing certain information concerning the dissolution. Id. It must also pay all back taxes and file all back annual reports. Id.

The document offered by Mr. Comey was not filed within 5 years of Lumatron's dissolution; it was filed almost 17 years after that dissolution. In addition, the document is an Illinois Form BCA-2.10, Articles of Incorporation, not an Illinois Form BCA-12.45/13.60, Application for Reinstatement of Domestic or Foreign Corporation. Moreover, the document does not mention either Lumatron's dissolution or any demand for reinstatement. Finally, there is no evidence that Mr. Comey filed any back annual reports or paid any back franchise taxes for Lumatron.

For all these reasons, we find that the document offered by Mr. Comey evidences Mr. Comey's incorporation of a new Lumatron

Corporation rather than the reinstatement of the old Lumatron Corporation. We therefore conclude that the Lumatron Corporation, which purportedly acquired Mr. Comey's portfolio in 1978, was never reinstated. We therefore also conclude that even if Mr. Comey had attempted to transfer his portfolio to Lumatron in 1978, via the purported Inventor's Agreement, Lumatron would have lacked legal capacity, and the transfer would have been ineffective under Illinois law.

Equally importantly, the record as a whole establishes that Mr. Comey, and not Lumatron or Landtrak, was the beneficial owner of the securities in Mr. Comey's portfolio, at least until those securities were reregistered in Landtrak's name in mid-1992.

Although Mr. Comey claims that he transferred his portfolio to Lumatron in 1978 and sold his Lumatron stock to Landtrak in 1987 or 1988, he also admitted at trial that until mid-1992: (1) The stock in the portfolio was registered in Mr. Comey's name, (2) the dividend checks were payable to Mr. Comey, (3) Mr. Comey personally cashed the dividend checks, and (4) the cash was placed in a bank account in Mr. Comey's name, not in a corporate account. Mr. Comey therefore had dominion and control of both the securities in his portfolio and the income generated by those securities, during the years in issue.

Mr. Comey claims that Lumatron and Landtrak used the dividends, interest, and capital gains generated by his portfolio

to support the research and development of his claimed inventions. There is no credible evidence in the record to that effect, however, and we have concluded that Landtrak had no business purpose and engaged in no business activity, during the years in issue. See supra pp. 19-20. We also note that on his Forms 1040 for the years 1985 through 1992, Mr. Comey reported that his total income varied from approximately $3,400 to approximately $5,100 per year. Although Mr. Comey claims that he was able to live on approximately $100 per week, the record supports the inference that Mr. Comey was using the amounts claimed to be Landtrak's income to meet his personal needs.

For all these reasons, we conclude that Mr. Comey was not acting as Landtrak's nominee or other agent; he was both the title owner and the owner for tax purposes of the securities in his portfolio, at least until the stock in the portfolio was reregistered in Landtrak's name in mid-1992. Accordingly, we also conclude that the $513 in interest and $44,080 in dividends received directly by Mr. Comey during 1991-92, and the $14,466 in capital gains realized directly by Mr. Comey during 1991-92, are Mr. Comey's income, as determined by respondent. See Corliss v. Bowers, 281 U.S. 376, 378 (1930), where the Supreme Court stated:

> taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed--the actual benefit for which the tax is paid. * * * The income that is subject to a man's unfettered command and that he is free to enjoy at his own option

may be taxed to him as his income, whether he sees fit
to enjoy it or not. * * *

Effect of 1992 Transfer of Title to Landtrak

In mid-1992, Mr. Comey caused the stock in his portfolio to be reregistered in Landtrak's name. Following this transfer of title, $2,919 in dividends was paid on stock registered in Landtrak's name, and the $591,438 proceeds of the sales of that stock by PaineWebber were paid to accounts maintained in Landtrak's name.

We consider whether this transfer of title to Landtrak sufficed to make Landtrak, rather than Mr. Comey, the party taxable on these dividends and net capital gain. We conclude it did not so suffice, and that Mr. Comey's income includes the dividends and net capital gain as determined by respondent.

First, as we have just explained, Mr. Comey personally received the income generated by his portfolio and appears to have used it for his personal benefit, while the portfolio was registered in his name. There is no evidence that Mr. Comey's dominion or control over, or his beneficial enjoyment of the fruits of, his portfolio was diminished by its brief reregistration in Landtrak's name.

Second, as explained supra pp. 18-21, a corporation may be disregarded for tax purposes if it has no business purpose and engages in no business activity. Petitioners have failed to show

that Landtrak had any business purpose or engaged in any business activity after Mr. Riopelle's ownership ended in 1988. Id. Accordingly, Landtrak's formal ownership of Mr. Comey's portfolio, following Mr. Comey's transfer of title to Landtrak in mid-1992, is disregarded for tax purposes. See Moline Props., Inc. v. Commissioner, 319 U.S. at 438-439 (citing Higgins v. Smith, 308 U.S. at 477-478 and Gregory v. Helvering, 293 U.S. 465 (1935)); Shaw Constr. Co. v. Commissioner, 35 T.C. at 1113-1114.

Third, we have found that Mr. Comey did not transfer even title ownership of his portfolio to Landtrak until mid-1992. A short time later, in August 1992, the portfolio was sold by PaineWebber, and the sales proceeds were transferred to Switzerland. There is no evidence that Landtrak, which engaged in no business, ever had dominion and control or beneficial ownership of the sales proceeds. Under these circumstances, Landtrak served as a mere "conduit", and its purported transitory ownership of Mr. Comey's portfolio must be disregarded for tax purposes, even if Landtrak's existence as a separate taxpayer should not be disregarded. See Commissioner v. Court Holding Co., 324 U.S. 331, 334 (1945) (sale by one person cannot be transformed for tax purposes into sale by another by using the latter as a conduit through which to pass title); Aiken Indus., Inc. v. Commissioner, 56 T.C. 925 (1971) (even a valid

corporation's receipt of funds will be disregarded where it has no dominion and control over, or beneficial interest in, the funds; temporary physical possession of funds is not enough); Hallowell v. Commissioner, 56 T.C. 600 (1971) (shareholder transferred greatly appreciated marketable securities to close corporation, which sold the securities shortly thereafter and then made distributions to or for benefit of shareholder in amounts roughly corresponding to realized gain; held, notwithstanding their form, transactions were in substance sales of securities by shareholder rather than by corporation).

We hold that Mr. Comey's 1992 income includes the $2,919 in dividends paid on stock registered in Landtrak's name and the $407,306 in net capital gain realized in 1992 on the sales of stock in the PaineWebber account, as determined by respondent.

3. Penalties Determined Against Mrs. Comey

Respondent determined that Mrs. Comey is liable for the following accuracy-related penalties under section 6662:  A $5,136 penalty for 1991, attributable to a substantial understatement of income tax (see sec. 6662(a) and (b)(2)); and a $56 penalty for 1992, attributable to negligence or disregard of rules or regulations (see sec. 6662(a) and (b)(1)).  Mrs. Comey bears the burden of proving that respondent's determinations of these penalties are erroneous.  See Rule 142(a); Monahan v.

Commissioner, 109 T.C. 235, 257 (1997) (taxpayers have burden of proof with respect to sec. 6662(b)(2) substantial understatement penalties); ASAT, Inc. v. Commissioner, 108 T.C. 147, 175 (1997) (taxpayers have burden of proof with respect to sec. 6662(b)(1) negligence or disregard penalties).[10]

We have sustained respondent's determinations concerning Mrs. Comey's taxable income for 1991 and 1992. At trial, petitioners neither argued nor introduced evidence suggesting that any exception to the section 6662 additions applied.

In short, petitioners have not shown that any exception applies or that respondent's determination is otherwise erroneous; respondent's determination of additions to Mrs. Comey's tax is sustained.

4. Additions and Penalties Determined Against Mr. Comey

Respondent has determined that Mr. Comey is liable for failure to file additions under section 6651(a)(1) in the amounts of $1,889 and $23,338 for 1991 and 1992, respectively. Respondent has also determined that Mr. Comey is liable for accuracy-related penalties under section 6662(a) attributable to

---

[10] Sec. 7491(c) places the burden of production on the Secretary with respect to the liability of any individual for any penalty, addition to tax, or additional amount, in court proceedings arising in connection with examinations commencing after July 22, 1998. The petitions in the cases at hand were filed in 1996.

negligence or disregard of rules or regulations in the amounts of $1,567 and $23,686 also for 1991 and 1992, respectively.  We have sustained respondent's determinations concerning the amounts of Mr. Comey's taxable income for both years.

Section 6651

Section 6651(a)(1) imposes an addition to tax for a taxpayer's failure to file a required return on or before the specified filing date unless the failure is due to reasonable cause and not to willful neglect.  Mr. Comey bears the burden of proving that the reasonable cause exception applies or that respondent's determination is otherwise erroneous.[11]  See Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985).

The parties have stipulated that Mr. Comey filed his Form 1040, Individual Income Tax Return, for 1991 on June 28, 1993. They have also stipulated that Mr. Comey filed his return for 1992 on August 4, 1993.

Petitioners have neither argued nor introduced any evidence suggesting that Mr. Comey applied for an extension of time to file or had reasonable cause for his failure to file on time. Accordingly, petitioners have failed to show that the section

---

[11] As explained supra note 10, the petitions in the cases at hand were filed before the effective date of the burden-shifting provisions of sec. 7491(c).

6651(a)(1) additions do not apply; respondent's determination with respect to those additions is sustained.

Section 6662

Respondent has determined that Mr. Comey is liable for accuracy-related penalties to tax for 1991 and 1992 attributable to negligence or disregard of rules or regulations, see sec. 6662(a) and (b)(1). Mr. Comey bears the burden of proving that an exception applies or that respondent's determination is otherwise erroneous. See Rule 142(a); ASAT, Inc. v. Commissioner, supra.

Petitioners have neither argued nor introduced evidence suggesting that an exception to the accuracy-related penalties applies. Accordingly, petitioners have failed to show that the section 6662 penalties do not apply; respondent's determination with respect to those penalties is sustained.

To reflect all the foregoing,

> Decisions will be entered
>
> for respondent.[12]

---

[12] As explained supra note 9, respondent has also issued a notice to Landtrak for 1991 and 1992. That notice included in Landtrak's income the items we have concluded were Mr. Comey's income. The Court expects, notwithstanding the obstacles that respondent may encounter in attempting to collect from petitioners, that in any calculations of the amounts owed by petitioners, respondent will treat any amounts collected from Landtrak in accordance with this opinion.